O

NO JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CENTURY SURETY COMPANY, | ) | Case No. CV 13-07289 DDP (AGRx) |
| Plaintiff, | ) | |
| v. | ) | **ORDER RE: MOTIONS FOR SUMMARY JUDGMENT** |
| GENE PIRA, INC.; LEXINGTON INSURANCE COMPANY; CHARTIS PROPERTY CASUALTY COMPANY, | ) | [Dkt. Nos. 36, 44, 50] |
| Defendants. | ) | |

Presently before the court are cross motions for summary judgment filed by Plaintiff Century Surety Company ("Century" or "Plaintiff"), Defendant Gene Pira, Inc. ("Pira"), and Defendants Lexington Insurance Company ("Lexington") and Chartis Property Casualty Company ("Chartis").[1] Having considered the submissions of the parties and heard oral argument, the court denies Plaintiff Century's motion, grants Pira's motion and Chartis and Lexington's motion, and adopts the following order.

///

///

---

[1] The two motions submitted by defendants, one by Pira and one by Chartis and Lexington, are essentially identical.

**I.    Background**

The facts underlying this insurance coverage action are largely undisputed, and arise from state court proceedings in Lexington , et al. v. Gene Pira, Inc., Los Angeles Superior Court Case No. BC507142.

Pira is a commercial plumbing contractor. (Plaintiff's Ex. 1 at 1). Century issued Pira a commercial general liability policy ("the Policy") for a one-year period beginning on December 11, 2009. Century issued the Policy under classification "98482 – Plumbing – commercial and industrial." (Ex. 1 at 9.)

The Policy included several endorsements, each of which excluded certain types of claims from coverage. One such endorsement was a "Testing or Consulting Errors and Omissions" exclusion, which stated that the Policy did not apply to injuries "arising out of [] an error, omission, defect, or deficiency in [] any test performed . . . ." (Id. at 41.) A separate, "Professional" exclusion disclaimed coverage for injuries "which would not have occurred . . . but for the rendering or failure to render any of the following professional services . . . [, including] [i]nspection, construction management, or engineering services." (Id. at 51.)

The Policy also contained an integration clause, which stated, "This policy contains all the agreements between [Pira] and [Century] concerning the insurance afforded. . . . This policy's terms can be amended or waved only be endorsement issued by [Century] and made a part of this policy.] (Plaintiff's Ex. 1 at 8.)

2

On July 27, 2010, over seven months after Century issued the Policy, Pira's independent insurance broker, Andrew Breckenridge, contacted Century's agent, Dan Cullinan, by e-mail, writing "Please have the 'testing' exclusion removed from the policy as we stated clearly . . . that as a plumber they do some 'backflow testing.' If this is two different things we are talking about and they are covered let me know either way." (Plaintiff's Ex. 27.) In response, Century's agent, Cullinan, wrote, "This is just excluding E[rror] & O[mission] coverage," and attached the testing exclusion once more. (Plaintiff's Ex. 28.) Cullinan did not issue an endorsement removing the testing provision. Pira's agent replied, "I take your response as E&O isn[']t covered but [b]ackflow testing is and its [sic] ok . . . ." (Plaintiff's Ex. 29.)

As alleged in the underlying state action, approximately two months later, on September 21, 2010, Pira conducted a fire pump test on sprinkler lines at a Four Seasons Hotel in Los Angeles. (Plaintiff's Ex. 3.) During the test, the formation of a water hammer caused sprinkler heads in the hotel owners' penthouse residences to activate. (Id. ¶¶ 7-8.) The state complaint alleges that the water hammer formed when Pira re-pressurized the sprinkler system too quickly. (Id. ¶ 9.) The fire sprinkler discharge caused over $2 million in damage. (Id. ¶ 10.) As a result of the water damage, the hotel made a claim to its insurer, Lexington, and the hotel owners, whose residences were damaged, made separate claims to their insurer, Chartis. (Id. ¶¶ 14-16.) Chartis and Lexington subrogated to their respective insureds' rights, and brought the underlying state suit against Pira. (Id. ¶¶ 16-17.)

3

Century defended Pira against the state suit under a reservation of rights, and filed this action for a declaratory judgment that, as a result of either the Policy's testing or professional exclusions, or both, Century has no duty to defend or indemnify Pira. Century, Pira, and Lexington and Chartis all now move for summary judgment.

## II. Legal Standard

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). All reasonable inferences from the evidence must be drawn in favor of the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 242 (1986). If the moving party does not bear the burden of proof at trial, it is entitled to summary judgment if it can demonstrate that "there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 323.

Once the moving party meets its burden, the burden shifts to the nonmoving party opposing the motion, who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256. Summary judgment is warranted if a party "fails to make a showing sufficient to establish the

existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. There is no genuine issue of fact "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

It is not the court's task "to scour the record in search of a genuine issue of triable fact." Keenan v. Allan, 91 F.3d 1275, 1278 (9th Cir. 1996). Counsel has an obligation to lay out their support clearly. Carmen v. San Francisco Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001). The court "need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposition papers with adequate references so that it could conveniently be found." Id.

**III. Discussion**

The question presented is whether the Policy covers Pira's acts at the hotel, notwithstanding the testing and professional services exclusions. "Interpretation of an insurance policy presents a question of law governed by general rules of contract interpretation." Universal City Studios Credit Union v. Cumis Ins., 208 Cal.App.4th 730, 737 (2012) (quotation marks and citation omitted). "The fundamental goal of contract interpretation is to give effect to the mutual intention of the parties." Bank of the West v. Superior Court, 2 Cal.4th 1254, 552 (1992). The provisions

5

of a contract must be read in context, taking into account the circumstances of the case and the language of the contract in its entirety. Universal City, 208 Cal.App.4th at 737. "Clear and explicit" contractual language controls. Bank of the West, 2 Cal.4th at 552. Where policy language is ambiguous, however, such that it is capable of at least two reasonable constructions, it should be "interpreted broadly, so as to afford the greatest possible protection to the insured."[2] MacKinnon v. Truck Ins. Exchange, 31 Cal.4th 635, 648 (2003). Accordingly, it is an insurer's burden to demonstrate that an exclusionary clause, which is interpreted narrowly against the insurer, plainly, clearly, and conspicuously disclaims coverage. Id.

Century argues that the dictionary definition of the word "test," a "critical examination, observation, or evaluation," is obvious and unambiguous. See Merriam Webster Online Dictionary, Merriam-WebsterInc., http:// www.merriam-webster.com (October 2014). Because, Century argues, the testing endorsement explicitly excludes injuries "arising out of . . . any test performed," the water damage allegedly caused by Pira's negligent performance of a fire pump test is not covered.

Century's exclusive focus on the word "test," however, ignores the full context in which the general commercial liability Policy was issued. Century does not dispute that Pira was a commercial plumber, or that the Policy covered claims which could be brought against a plumber. (Century Motion at 16.) Century concedes, for

---

[2] Parol evidence is admissible to determine the meaning of ambiguous contract terms. Hervey v. Mercury Cas. Co., 185 Cal.App.4th 954, 961.

example, that damages resulting from a faulty bathtub installation, failure to shut off water before attempting a pipe repair, or a welding-related fire would likely be covered. (Mot. at 17.)

As Defendants point out, however, examination and evaluation are integral parts of plumbing work, including the type of installation and repair projects Century lists as examplars of covered activities. Were "test" to be interpreted as Century suggests, Defendants argue, no type of plumbing would be covered, rendering Pira's commercial liability coverage wholly illusory.

The court agrees. "Insurance coverage is deemed illusory when the insured receives no benefit under the policy." <u>Jeff Tracy, Inc. v. U.S. Specialty Ins. Co.</u>, 636 F.Supp.2d 995 (C.D. Cal. 2009) (internal quotation omitted). Insurance policies may not provide illusory coverage. <u>Villalpando v. Transquard Ins. Co. Of Am.</u>, – F.Supp.2d –, 2014 WL 644391 at *5 (N.D. Cal. 2014). It is unclear to the court how Pira could undertake any plumbing activity without examining, evaluating, or observing the item upon which he was engaged to work.[3]

In arguing that the Policy's coverage is not illusory, Century highlights the ambiguities in the testing exclusion. Rather than hew to the supposedly explicit meaning of "testing," Century shies away from the "any examination," dictionary-type definition, asserting instead that the term "testing" only covers "stand-alone testing work" that is not related to other, more hands-on plumbing

---

[3] Similar logic applies to the professional services exception, which uses the word "inspection," defined as "the act of looking at something closely in order to learn more about it, to find problems, etc." Merriam Webster Online Dictionary, Merriam-WebsterInc., http:// www.merriam-webster.com (October 2014).

7

repair work. (Century Opp. at 15.) Though not entirely clear, Century appears to suggest that a loss due to testing related to archetypical plumbing activities, such as pipe repair, would be covered, but only because Century would be unable to determine whether the repair or the evaluation actually caused the loss. (Century Opp. at 15.) In other words, if Pira installed a pipe, then tested the pipe, and the pipe then broke, Century would cover the resulting loss because it would not be able ascertain whether the test itself caused the rupture.

    Century further argues that in this case, Century <u>can</u> determine that the testing caused the loss because Pira was only testing the hotel's fire pumps, and not doing any repair or other traditional plumbing work. Therefore, Century contends, this particular test is not covered. Though Century's logic regarding determination of causation holds water, this argument does little to demonstrate the clarity of the term "test." To the contrary, Century appears to acknowledge that some, but not all, tests would be covered. The source of Century's "stand alone testing work" distinction, which does not appear in the Policy or any endorsement, is not readily apparent to the court. Century's interpretation of "test" to mean some version of "any freestanding evaluation not bound up with a physical repair" is, therefore, not the only reasonable construction of the term.

    The exclusion's lack of clarity is illustrated by the exchange between Pira's agent and Century's agent. Prior to the loss at issue here, Pira's agent communicated one interpretation to Century. Pira's agent asked that the testing exclusion be removed,

as Pira admittedly conducted "backflow testing." Pira's agent also drew attention to the ambiguity of the exclusion, pointing out the possibility that "testing," as used in the policy, and the "backflow testing" conducted by Pira might be "two different things," and asking Century's agent to clarify. Century's agent did not disabuse Pira's agent of any misconception regarding the term "testing," but rather, at best, reinforced the ambiguity by responding that the testing exclusion was "<u>just</u> excluding E[rror] & O[mission] coverage." (Emphasis added). In other words, Pira's agent asked whether the testing exclusion covered a broader or narrower set of possibilities and Century's agent responded that the exclusion applied "just" to a certain set. It was, therefore, reasonable for Pira to interpret the Policy as covering the types of testing he conducted. See <u>Security Serv. Fed. Credit Union v. First Am. Title Co.</u>, No. CV 10-4824 SJO, 2012 WL 5954815 at *11-12 (C.D. Cal. Jan. 27, 2012).

Pira's question regarding the extent of the exclusion, Century's agent's response, and the tensions between Century's all-encompassing dictionary definition of testing and its alternative "stand alone testing" construction illustrate that the meaning of the testing exclusion was ambiguous. To the extent Century intended the exclusion to apply to plumbing tests unconnected to some contemporaneous repair, it could have drafted language to that effect with relative ease. Absent any such elucidation or definition of the word "test," its meaning in the Policy is ambiguous, and must be construed in Pira's favor.

**IV. Conclusion**

For the reasons stated above, Century's Motion is DENIED. Pira's motion and Chartis and Lexington's Motion are both GRANTED.

IT IS SO ORDERED.

Dated: November 19, 2014

DEAN D. PREGERSON
United States District Judge